DYK, Circuit Judge,
concurring in part and dissenting in part.
I join in the majority’s holding that the claims of U.S. Patent No. 7,323,463 (“the '463 patent”) are invalid as obvious, and that the district court correctly construed the relevant claims of the patents. I would hold, however, that claim 4 of U.S. Patent No. 7,030,149 (“the '149 patent”) is also invalid as obvious.
Claim 4 of the '149 patent recites:
A method of reducing the number of daily topical ophthalmic doses of brimondine [sic] administered topically to an eye of a person in need thereof for the treatment of glaucoma or ocular hypertension from 3 to 2 times a day without loss of efficacy, wherein the concentration of brimonidine is 0.2% by weight, said method comprising administering said 0.2% brimonidine by weight and 0.5% timolol by weight in a single composition.
'149 patent col. 10 11. 10-17 (emphases added).
The majority concludes, correctly, that the composition claimed in the '463 patent would have been obvious, even though it has the unexpected property that it can be dosed twice a day without a loss of efficacy (specifically, without the appearance of a so-called “afternoon trough”). Yet the majority affirms the validity of a claim drawn to the method of dosing that same composition twice a day, because the prior art did not disclose that this dosing regimen “would eliminate the afternoon trough issue.” Maj. Op. 1294. I think that the different results as between the claims of the '463 patent and claim 4 of the '149 patent cannot be reconciled.
While a new and nonobvious method of using an existing (or obvious) composition may itself be patentable, see Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1378 *1296 (Fed.Cir.2005), a newly-discovered result or property of an existing (or obvious) method of use is not patentable. See Abbott Labs. v. Baxter Pharm. Prods., 471 F.3d 1363, 1368-69 (Fed.Cir.2006); Brassica Prot. Prods. LLC v. Sunrise Farms (In re Cruciferous Sprout Litig.), 301 F.3d 1343, 1350-51 & n. 4 (Fed.Cir.2002); Bristol-Myers Squibb Co. v. Ben Venue Labs., 246 F.3d 1368, 1376 (Fed.Cir.2001).
In this case, the method of claim 4 consists of a single step: applying a fixed combination of 0.2% brimonidine and 0.5% timolol twice a day. See '149 patent col. 10 11. 10-17. This method was surely obvious to try. See KSR Int’l Co. v. Teleflex Inc., 550 U.S. 398, 421, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). The majority recognizes that “it was common at the time of the invention to dose the serial application of brimonidine and timolol twice per day,” and that “the prior art shows concomitant administration of brimonidine and timolol ... dosed twice per day.” Maj. Op. 1290, 1294. Moreover, the record shows that reducing the number of daily doses of anti-glaucoma drugs was seen as valuable for improving patient compliance and for reducing exposure to toxic ingredients. The method of applying a fixed combination of 0.2% brimonidine and 0.5% timolol twice a day would therefore have been obvious over the prior art.
The majority’s outcome appears to rest, therefore, on the notion that claim 4 was not obvious because it claims the result of twiee-a-day dosing — avoiding “a loss of efficacy in the afternoon.” See Maj. Op. 1294. Avoiding a “loss of efficacy” is not a separate step, but rather a result of the claimed method. See Bristol-Myers Squibb, 246 F.3d at 1374-78; see also Abbott Labs., 471 F.3d at 1369. We should recognize in this case, as we did in Bristol-Myers Squibb, that “[njewly discovered results of known processes directed to the same purpose are not patentable.” Bristol-Myers Squibb, 246 F.3d at 1376.[1]
For these reasons, I respectfully dissent from the majority’s holding that claim 4 of the '149 patent is not invalid as obvious.

. The majority appears not to dispute that claiming the result of an otherwise unpatentable process cannot render the process patentable, but suggests that this rule should not apply here because there may exist specific formulations of a fixed combination of 0.2% brimonidine and 0.5% timolol that do not inherently achieve this result. See Maj. Op. 1294 n.l. Claim 4, however, is not limited to any particular formulation. See '149 patent col. 10 11. 10-17. The majority’s argument therefore only suggests that the claim would have been even more clearly obvious, since it would cover the use of compositions that do not even achieve the allegedly unexpected result. "Claims [that] are broad enough to read on obvious subject matter are unpatentable even though they also read on nonobvious subject matter.” In re Lintner, 59 CCPA 1004, 458 F.2d 1013, 1015 (1972); see also ArcelorMittal Fr. v. AK Steel Corp., 700 F.3d 1314, 1325 (Fed.Cir.2012) (citing Lintner); Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318, 1328 n. 4 (Fed.Cir.2008) (same).